# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARIO TAYLOR | ) | |
| | ) | |
| v. | ) | No. 13 C 683 |
| | ) | |
| UNITED STATES OF AMERICA | ) | Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

After he entered a guilty plea in a deal that would have resulted in a 21-year sentence, Petitioner Mario Taylor had second thoughts. He proceeded to trial, was convicted by a jury on drug conspiracy charges, and sentenced to 360 months' imprisonment. The Seventh Circuit affirmed his conviction and, after a limited remand, affirmed his sentence as well. *See United States v. Martin*, 618 F.3d 705, 739 (7th Cir. 2010) (affirming convictions of Taylor and co-conspirators); *United States v. Martin*, Nos. 07-2272, 07-4010, 07-3893, 07-3940, 2011 WL 5519811 (7th Cir. Nov. 14, 2011) (affirming sentencing in wake of 2007 Guideline amendments and *Kimbrough v. United States*, 552 U.S. 85 (2007).)

Taylor now brings this motion for relief from his conviction and sentence. 28 U.S.C. § 2255. He argues that the attorneys appointed to represent him in the district court provided ineffective assistance in a variety of ways: by failing to move to dismiss the indictment; failing to obtain a written version of a proposed plea agreement; failing to present a "buyer-seller" defense; failing to investigate a government witness's drug use; failing to explain the United States Sentencing Guidelines to him; failing to challenge the use of a general verdict form; and failing to make appropriate challenges to the sufficiency of the evidence and to his sentence. He also alleges that he had a Due Process right to be present when the court affirmed his sentence on remand.

As explained below, Taylor's claims are defeated by the record or by legal principles. His petition [1] is denied, and the court declines to grant a Certificate of Appealability.

## **FACTS AND PROCEDURAL HISTORY**[1]

Petitioner Mario Taylor was involved in a "sprawling narcotics-distribution network on the west side of Chicago, Illinois, that had been in existence since 1998." *Martin*, 618 F.3d at 708. A street gang, the "Mafia Insane Vice Lords" or the "Mafia Insanes," controlled locations where drugs were sold and collected street "taxes" from individuals sold drugs at those locations. *Id.* Mario Taylor, himself a member of the "Four Corner Hustler" street gang, supplied drugs to the Mafia Insanes operation. *Id.*

In 2004, the Government filed a 72-count indictment, charging 48 persons involved in the scheme with federal drug and weapons offenses. Taylor was charged with one count of conspiracy to possess and distribute narcotics, 21 U.S.C. § 846, five counts of using a telephone in furtherance of the conspiracy, § 843(b), and five counts of drug possession with intent to distribute, § 841(a). (*See* Indictment, *United States v. Martin*, No. 04-cr-495-38 [200], Counts 1, 48–55, 57–58.) In August 2006, Taylor entered into a plea agreement that would have resulted in a 21-year sentence, but in January 2007 he withdrew his guilty plea and proceeded to trial a few months later. (*See* Plea Agreement, *United States v. Martin*, No. 04-cr-495-38 [1386]; Jan. 25, 2007 Minute Entry, *United States v. Martin*, No. 04-cr-495-38 [1616].) On May 9, 2007, the jury convicted Taylor of all except two telephone charges; he was sentenced to 360 months' imprisonment. (*See* Judgment, *United States v. Martin*, No. 04-cr-495-38 [1965].)

The Seventh Circuit affirmed Taylor's conviction on appeal, but ordered a limited remand so the district court could consider whether, in light of *Kimbrough v. United States*, 552 U.S. 85 (2007), "the sentencing disparity between crack and powder cocaine yields a sentence greater than necessary to achieve 18 U.S.C. § 3553(a)'s purpose." *Martin*, 618 F.3d at 739. This court

---

[1] The following facts are taken from the Seventh Circuit's decision affirming this court's judgment of conviction on direct appeal. *See generally United States v. Martin*, 618 F.3d 705 (7th Cir. 2010).

declined to adjust Taylor's sentence, however, noting that Taylor's sentence was based on quantities of powder, not crack, cocaine, and on his extensive criminal history, including a conviction for attempted murder. (*See* Oct. 7, 2011 Order, *United States v. Martin*, No. 04-cr-495-38 [2483], 5–6.) On November 14, 2011, the Seventh Circuit affirmed this court's decision not to revisit Taylor's sentence. *United States v. Martin*, 2011 WL 5519811 at *1–3. Taylor did not file a *certiorari* petition with the Supreme Court, so his "judgment of conviction" became final on February 14, 2012. *See* 28 U.S.C. § 2255(f)(1); *Robinson v. United States*, 416 F.3d 645, 647 (7th Cir. 2005). He filed his § 2255 petition within one year of that date, on January 28, 2013, making it timely.

## DISCUSSION

Relief under 28 U.S.C. § 2255 "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice," including where the sentence imposed by the court exceeded the maximum sentence authorized by law. *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013); 28 U.S.C. § 2255(a). Generally, before a court may consider a § 2255 petition, the claims brought in it must have been raised and exhausted on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). A claim not previously raised is procedurally defaulted, and a court may not consider it on habeas review unless the petitioner demonstrates both cause and prejudice. *Massaro*, 538 U.S. at 504. The only exception to this requirement is that a petitioner may raise an ineffective assistance of counsel claim in a § 2255 petition regardless of "whether or not the petitioner could have raised the claim on direct appeal." *Id.*

### I. Ineffective Assistance of Trial Counsel

In assessing a claim of ineffective assistance of trial counsel, the court will "strongly presume" that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013)

3

(citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). The burden to demonstrate a trial counsel's constitutional deficiencies rests with Petitioner, who must establish two elements: "that his counsel's performance fell below an objective standard of reasonableness, and that he was prejudiced as a result." *Jones v. Butler*, 778 F.3d 575, 583 (7th Cir. 2015) (citing *Strickland*, 466 U.S. at 687–88). To satisfy the second element, Petitioner must show that there is a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Petitioner brings several ineffective assistance of trial counsel claims, which the court discusses below.

### A. Grounds One, Seven

In Ground One of his petition, Taylor contends that trial attorneys Paul Wagner, Keri Ambrosio, and Bradley Harris were ineffective for not filing a motion to dismiss or quash the "defective" indictment. (Habeas Pet. Mem. [3], 4.) Ground Seven levies the same charge against attorney James Young. (*Id.* at 17.) The indictment was defective, according to Petitioner, because it "was so vague and poorly framed [that] it failed to provide adequate notice of the charges against Petitioner," as required by the Due Process Clause. (*Id.* at 4.)

The claim lacks merit. "An indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010). The indictment in this case satisfies this standard: it "tracked" the words of the statute by stating the elements of each crime charged, *id.* at 958–59. (*See* Indictment, *United States v. Martin*, No. 04-cr-495-38.) And the document described more than enough "factual particulars" to alert Taylor to "the specific conduct against which he w[ould] have to defend himself at trial," *id.* at 959. (*See* Indictment, *United States v. Martin*, No. 04-cr-495-38.) For example, the conspiracy count

4

alone set out 22 paragraphs, each alleging specific details about the sophisticated drug distribution conspiracy involving dozens of individuals, including Taylor. (*See* Indictment, *United States v. Martin at al.*, No. 04-cr-495-38 [200], ¶¶ 1–22.) Taylor's telephone and possession charges provided dates and times for the calls, as well as dates for the drug possession allegations. (*See, e.g., id.* at Counts 50, 51, 52, 53, 54, 55, 57, 58.) The indictment's recitation of the legal elements of the offense, coupled with information about dates and times when specific conduct took place, is legally sufficient. *White*, 610 F.3d at 959. Because any challenge to the indictment would have failed, Taylor's attorneys were not ineffective for failing to move to quash it. These claims are denied.

### B.     Grounds Two, Three, Six, Eight

Ground Two alleges trial counsel ineffectiveness for "failing to perform effectively during the plea process," which "forced Petitioner into unknowingly and unintelligently entering a plea of not guilty and proceeding to trial." (Habeas Pet. Mem. at 5, 8.) Ground Three asserts that counsel rendered ineffective assistance by failing to put the plea agreement in writing. (*Id.* at 10.) In Ground Six, Petitioner reiterates counsel's purported failure to put the agreement in writing, and claims Young failed to explain "the pertinent law in relation to Petitioner's charges." (*Id.* at 16.) Ground Eight riffs off the same theme: Petitioner faults Young for failing to "explain the sentencing guidelines and applicable law and how they relate to Petitioner before proceeding to trial." (*Id.* at 19.) Had Young done so, Petitioner continues, Petitioner would have accepted the Government's plea deal in lieu of trial and the resulting 30-year prison term. (*Id.* at 20–21.)

These arguments are flatly inconsistent with the record: Attorney Brad Harris, one of several who represented Taylor before this court, did in fact negotiate a written plea agreement. That agreement detailed the factual basis of Taylor's offense conduct, the Guidelines calculations that underpinned the maximum sentence he could receive, and the Government's commitment to recommend a sentence of approximately 21 years. (*See* Plea Agreement,

*United States v. Martin*, No. 04-cr-495-38 [1386].) Taylor *signed* that agreement and entered a guilty plea on his conspiracy charge. (*See id*; Aug. 22, 2006 Minute Entry, *United States v. Martin*, No. 04-cr-495-38 [1381].) Taylor later sought to withdraw his plea, however, and the court granted his motion at a status hearing. (*See* Jan. 25, 2007 Minute Entry, *United States v. Martin*, No. 04-cr-495-38 [1616].) By this time, Harris had been granted leave to withdraw, citing "irreconcilable differences" with Taylor (*see* Motion for Leave to Withdraw, *United States v. Martin*, No. 04-cr-465-38 [1569], ¶ 2), perhaps arising from Taylor's change of heart with respect to the plea deal that Harris had struck on Taylor's behalf. Before the court allowed Taylor to withdraw his guilty plea, he was apprised, by both his attorney and the court, of the likely consequences of such a decision:

> Young: Just to make sure today in open court that Mr. Taylor is fully aware that the plea agreement and the considerations that the government made to him in that plea agreement are now gone.
>
> There will be no reduction on the sentencing guidelines pursuant to that plea agreement if you want to withdraw from that plea agreement.
>
> Is that correct?
>
> Taylor: Yes.
>
> Court: You understand that.
>
> And you understand, Mr. Taylor -- I don't think there is any reason not to review this. You understand that if you are convicted at the trial, the sentence that you are facing is likely to be worse than whatever the original deal was. And I am not looking at that plea agreement right now.
>
> You understand that?
>
> Taylor: Yes, ma'am.
>
> Court: All right.

(Jan. 25, 2007 Status Hearing, *United States v. Martin*, No. 04-cr-495-38 [2651], 5:24–6:16.) Young then took the case to trial—exactly what Petitioner desired. (*See* Sentencing Trans., *United States v. Martin*, No. 04-cr-465-38 [2065], 22:7–11 ("[H]e is the only lawyer I did have

6

that did say, if you want to go to trial, I'll go, . . . I thought that this was a court of law. I didn't know that it all depends on who goes in and tell first.").)

In short, there is no merit to his suggestion that his attorneys did not perform effectively during the plea process, or that the attorneys failed to reduce the plea agreement to writing. They did both—and rendered more than adequate assistance throughout the process. It was Taylor who opted to renege on the plea deal. His suggestion that his lawyers were required to talk him out of the consequences of that bad decision ignores Young's effort to do precisely that, and Taylor's own insistence on proceeding to trial. There was no ineffective assistance here.

### C. Ground Four

Ground Four alleges that trial counsel James Young was ineffective for failing to make a "buyer-seller" argument. A decision not to present such a defense is a part of counsel's trial strategy, which is virtually unchallengeable. *See United States v. Hirschberg*, 988 F.2d 1509, 1513 (7th Cir. 1993) ("[W]hen defendants attack trial counsel's strategy choices, [the court] offer[s] enormous deference to those choices[.]"). In any event, the evidence presented at trial defeated any attempt to characterize Taylor's participation in the offense conduct as a simple "buyer-seller" arrangement. Taylor, who held a leadership role in the "Four Corner Hustlers" street gang, obtained cocaine from a wholesale source and supplied large quantities to other gang members, including Donnelle Simmons and Jerome Terrell. (*See, e.g.,* Tr. Trans., *United States v. Martin*, 04-495-38 [1941], 415:9–23; 417:4–23.) Several co-defendants, such as John Brayboy, Schmonte Taylor, and Terrence Bearden worked for Taylor: they cooked crack cocaine and delivered drugs and money. (*Id.* at 410:6–19; 431–33; 491–99.) Such evidence fits squarely within a standard conspiracy charge, which often includes a "division of labor" so that criminal activities are conducted with greater efficiency. *Cf. United States v. Colon*, 549 F.3d 565, 569 (7th Cir. 2008). Taylor's activities consisted of far more than a "buyer-seller" arrangement, and any argument to the contrary would have failed. It follows that the failure to raise this argument was not ineffective, and therefore the claim is denied.

7

### D. Grounds Five, Ten

Next, Petitioner contends that trial counsel was ineffective for failing to investigate drug use by a government witness, Sanchez, and for failing to move for a mistrial based on the Sanchez's alleged misconduct. (*See* Habeas Pet. Mem. at 14, 23.) These claims, too, are belied by the record.

The government disclosed drug use by the witness prior to trial, and defense counsel cross-examined the witness vigorously on the issue. (Tr. Trans. at 204–07.) When the court learned, post-trial, that the witness had failed to report for a drug test shortly after he finished testifying, it held a hearing at which Taylor's attorney questioned the witness, who admitted he had smoked marijuana on the evening after his testimony. (*See* May 9, 2007 Evid. Hearing Trans., *United States v. Martin*, No. 04-cr-495-38 [2149], 4:23–5:6.) He also admitted that he failed to appear at the pretrial services office soon after he testified because he knew he would test positive for marijuana. (*Id.* at 11:6–11.)

Defense counsel for one of Taylor's co-defendants hired an investigator to dig further. (*Id.* at 15:10–21.) Taylor's attorney joined that investigation. (*Id.* at 15:21–24.) But no other evidence was discovered that suggested Sanchez was under the influence of drugs when he testified. More importantly, there is no basis to conclude that Taylor's attorney was ineffective for failing to pursue the matter—counsel did so, aggressively. Taylor does not suggest what his attorney would have discovered had he done even more, so Petitioner cannot show that he was prejudiced in any way. *See Strickland*, 466 U.S. at 687. Further, the introduction of one or two additional instances of pretrial drug use by the witness, if such evidence existed, is simply not sufficient to demonstrate that a reasonable probability exists that this evidence would have affected the trial's outcome. *Strickland*, 466 U.S. at 687.

For similar reasons, Ground Ten, which alleges ineffectiveness on the part of Young for not moving for a mistrial based on Sanchez's drug use, is denied. The evidentiary hearing

revealed nothing that would have augured in favor of a mistrial based on Sanchez's drug use. Young was not, therefore, ineffective, for failing to request one.

### E. Ground Nine

Ground Nine faults trial counsel for failing to object to the use of a general verdict form by the jury. (Habeas Pet. at 21.) The record defeats this argument, too. The court *did not* use a general verdict form in this case, and in fact, instructed the jury that it must agree on the amount and type of drugs for which Taylor was responsible. (*See, e.g.*, Tr. Trans. at 1111–1117.) The jury returned a special verdict finding Taylor responsible on Count 1 for more than 5 kilograms of cocaine and 50 grams of crack, on Counts 4 and 7 for between 500 grams and 5 kilograms of cocaine, and on Count 10 for more than 50 grams of crack. (Tr. Trans. at 1185:24–1186:7; 1186:23–1187:3; 1187:19–1188:1.) The jury was also instructed that the government was required to prove drug quantity beyond a reasonable doubt. (*Id.* at 1111:8–11.) The record defeats Taylor's claims of ineffective assistance in this regard.

### F. Grounds Eleven, Thirteen

In Grounds Eleven and Thirteen, Taylor claims his attorneys were ineffective for failing to challenge the sufficiency of the conspiracy and telephone counts against him. (Habeas Pet. at 26, 30.) These claims are, once again, contradicted by the trial record. At trial, counsel did challenge the sufficiency of the evidence. (Tr. Trans. at 1032:5–7; *see generally id.* at 1031–51.) Granted, such a challenge had little hope for success, in light of the substantial evidence used to sustain Taylor's convictions, including wiretapped calls, cooperating witness testimony, law enforcement surveillance, and drug seizure evidence. (*See* Tr. Trans. at 996–1021.) But counsel is not ineffective for raising a losing argument—it may have been the best one available. Again, the court will not second-guess counsel's trial strategy, absent extraordinary displays of incompetence not even remotely present here. *See Hirschberg*, 988 F.2d at 1513

Finding no error by Petitioner's trial counsel, these claims fail, as well.

9

### G. Ground Twelve

Ground Twelve raises a claim of cumulative error that focuses on counsel's actions both at trial and sentencing. (Habeas Pet. at 29.) *See United States v. Allen*, 369 F.3d 842, 846 (7th Cir. 2001) ("Cumulative errors, while individually harmless, when taken together can prejudice a defendant as much as a single reversible error and violate a defendant's right to due process of law."). But that principle has no application here, where Petitioner cannot identify even a single error, much less multiple errors, that "so infested the jury's deliberation that they denied the petitioner a fundamentally fair trial." *See id.* (quoting *Alvarez v. Boyd*, 225 F.3d 820. 824 (7th Cir. 2000)). Petitioner must show that but for the alleged multiple errors, the trial outcome probably would have been different. Absent a showing of even a single error, much less prejudice, he has not done so, and this claim is denied. *See Alvarez*, 225 F.3d at 825.

### H. Ground Fourteen

Petitioner next argues that his due process rights were violated because he was not present during his re-sentencing following a limited remand from the Seventh Circuit. *See* (Habeas Pet. at 32); *Martin*, 618 F.3d at 739 (remanding to district court to consider whether, in light of *Kimbrough v. United States*, 552 U.S. 85, 128 (2007), district court would consider the crack-powder disparity in the Guidelines and reduce his sentence). As discussed in the facts section above, Taylor was not re-sentenced. The court declined to adjust Taylor's sentence because it was based on drug quantities of powder, not crack cocaine, and on his extensive criminal history, which included an attempted murder conviction. (*See* Oct. 7, 2011 Order, *United States v. Martin*, No. 04-cr-495-38, at 5–6.)

Petitioner's due process claim would find support, if there were any, in the record at the time of Petitioner's second appeal to the Seventh Circuit, and he offers no arguments for cause or prejudice to excuse his failure to raise them. *See Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) ("[T]he failure to raise issues on direct appeal bars a petitioner from raising them in a section 2255 proceeding unless he or she makes a showing of good cause for and

prejudice from that failure."). The Seventh Circuit even invited Petitioner in the course of his second appeal "to file submissions addressing the appropriate disposition," but noted that he did not act "on this invitation." *Martin*, 2011 WL 5519811 at *2. Petitioner's claim is therefore defaulted.

The claim is also meritless. The Seventh Circuit has concluded that a defendant has no right to be present at hearings that simply modify an original sentence. In *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996), for example, the Seventh Circuit remanded a case to the district court with instructions to remove a sentencing enhancement for obstruction of justice. *See id.* (citing *United States v. Parker*, 25 F.3d 442 (7th Cir. 1994)). On remand, the district court resentenced the defendant by written order and without a new sentencing hearing, which the defendant argued was error. *Id.* The Court of Appeals disagreed, concluding that "there is no such right [to be present at a re-sentencing] when as here the case is remanded not for a new sentencing hearing but merely for a nondiscretionary correction of the original sentence." *Id.*

True, unlike in *Parker*, in this case the Court of Appeals' remand *was* for a discretionary act—in the sense that this court was entitled to consider *Kimbrough* and decide whether the case justified a lower sentence. That distinction does not dictate a different result, however. In *United States v. Podhorn*, 406 Fed. Appx 42, 2010 WL 4723360 (7th Cir. 2010), the Court of Appeals clarified, albeit in an unpublished opinion, that *Parker* does not require a defendant to be present for a re-sentencing when the earlier "opinion identifies a discreet, particular error that can be corrected on remand without the need for redetermination of other issues." *Podhorn*, 406 Fed. Appx. at 45. In that case, the Court of Appeals issued a limited remand, concluding that the district court had erred in calculating a defendant's advisory Guidelines range. *Id.* at 43. On remand, the district court adjusted the advisory guidelines range and lowered the defendant's sentence, but did not hold a new sentencing hearing. *Id.* at 44. The Court of

11

Appeals held that the district court's recalculation of the defendant's Guidelines range and its decision to issue a lower sentence did not require the defendant's presence. *Id.* at 45.

The remand in Petitioner's case, as in *Podhorn*, was "discreet" and "particular"—it was limited to consideration of *Kimbrough*'s holding that a district court is permitted to reject, on policy grounds, a sentence that follows the crack-to-powder cocaine ratio to the letter. *See Martin*, 618 F.3d at 739 (discussing *Kimbrough*). Significantly, the crack-to-powder cocaine ratio made no difference to Taylor's sentence. The court concludes that Taylor had no right to be present for the decision not to re-sentence him, and no due process violation occurred.

**I.     Ground Fifteen**

Lastly, Petitioner faults his counsel for failing to raise certain issues at sentencing. None of these sentencing arguments have merit.

First, Petitioner argues that his sentence was illegal because he was not convicted under § 841(b)(1). His reasoning is as follows: he was convicted of 21 U.S.C. §§ 846 (conspiracy to distribute a controlled substance), 841(a)(1) (possession with intent to distribute a controlled substance), and 843(b) (using a telephone in furtherance of conspiracy), but not § 841(b)(1) (penalties for violating § 841(a)). He was not convicted under § 841(b)(1), his argument goes, so his 360-month prison term was unlawful. (Habeas Pet. at 36–40.)

Section 841(b)(1), however, does not define an offense, but instead dictates the statutory sentencing range that attaches to violations of § 841(a), depending on the type and quantity of controlled substance involved. Further, § 846 states that any person who is convicted of conspiracy to distribute a controlled substance "shall be subject to the same penalties as those prescribed for the offense [which was the object of the] conspiracy." And a person who violates § 841(a) "shall be sentenced" as determined by § 841(b). Therefore, because Taylor was convicted under both §§ 841(a) and 846 (*see* Jury Verdict, *United States v. Martin*, No. 04-cr-495-38 [1771]), he was subject to the penalties prescribed under § 841(b)(1),

12

which in his case carried a statutory maximum penalty of life imprisonment. His sentence was therefore lawful, and his attorney was not ineffective for failing to argue to the contrary.

Petitioner elsewhere alleges that counsel was ineffective for failing to raise an *Apprendi* argument. (Habeas Pet. at 29). This argument is also a non-starter. *Apprendi* stands for the proposition that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Taylor received a 360-month sentence, but the statutory maximum under Count 58, for which the jury found Taylor responsible beyond a reasonable doubt for 50 grams of crack cocaine (*see* Tr. Trans. at 1187:19–1188:1), was life imprisonment. Because Taylor was sentenced within the maximum sentence authorized by the jury's drug-quantity findings, *Apprendi* was not implicated, and his counsel was not ineffective for failing to raise an argument based on the case.

### III.     Certificate of Appealability

The court denies a Certificate of Appealability on all claims. To receive a Certificate of Appealability, Taylor must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" exists only where "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court's ruling is not one that jurists of reason would find debatable.

## **CONCLUSION**

The court denies Petitioner's habeas corpus petition [1] and declines to issue a Certificate of Appealability.

ENTER:

Dated: July 9, 2015

REBECCA R. PALLMEYER
United States District Judge